# EXHIBIT B

## INSTRUCTION No. __

## AFFIRMATIVE DEFENSE—DISPUTED CONDITION PRECEDENT

Kerrigone asserts in this case as an affirmative defense that Wilson-Davis failed to comply with a condition precedent.

Specifically, Kerrigone asserts that he and Wilson-Davis agreed that Kerrigone did not owe Wilson-Davis any indemnity obligation unless and until: (1) a legal action was brought against Wilson-Davis, and (2) Wilson-Davis gave notice to Kerrigone that Wilson-Davis had been served with a legal action stating the nature and basis of any claim alleged against the firm. Based on the evidence, you must decide whether the parties intended that this condition was part of the contract. If you decide that this condition was part of the contract, then Wilson-Davis had to be served with a legal action against it and give notice of that to Kerrigone before Kerrigone was required to perform any indemnity obligation under his contract.

Source / Authority:

Model Utah Jury Instructions 2nd (MUJI 2d) – CV2112 (modified).

INSTRUCTION No. __

CONVERSION—ELEMENTS OF LIABLITY

For the plaintiff, ABK, LLC to recover from defendant, Wilson-Davis on its claim of conversion, you must find that all of the following have been proved by a preponderance of the evidence:

1. the plaintiff ABK, LLC owned personal property;

2. without the plaintiff ABK, LLC's authorization, the defendant Wilson-Davis exercised a distinct act of dominion or ownership over the plaintiff's personal property;

3. the plaintiff ABK, LLC demanded the return of the property; and

4. the defendant Wilson-Davis refused to return the property.

If you find that these elements have not been proved, then your verdict must be for the defendant.

If you find that each of these elements has been proved, then your verdict must be for the plaintiff ABK, LLC.

Source / Authority:

Glenn Arms Assocs. v. Century Mortg. & Inv. Corp., 680 P.2d 1315, 1317 (Colo. Ct. App. 1984); Beneficial Finance Co. v. Sullivan, 534 P.2d 1226, 1229 (Colo. Ct. App. 1975); Byron v. York Inv. Co., 296 P.2d 742, 745 (Colo. 1956).

**INSTRUCTION No. __**

**DAMAGES--CONVERSION**

Plaintiff, ABK, LLC has the burden of proving, by a preponderance of the evidence, the nature and extent of its damages.  If you find in favor of the plaintiff ABK, LLC on its conversion claim, you may award plaintiff ABK, LLC damages, if any, caused by the conversion.

The measure of damages for conversion is the fair market value of the converted property at the time and place of the conversion.

Source / Authority:

Glenn Arms Assocs. v. Century Mortg. & Inv. Corp., 680 P.2d 1315, 1317 (Colo. App. 1984); Employers' Fire Ins. Co. v. Western Guar. Fund Servs., 924 P.2d 1107, 1111(Colo. App. 1996).

# INSTRUCTION No. __

## DAMAGES—UNCERTAIN CAUSE—NOMINAL DAMAGES

You may not award substantial damages when there is uncertainty regarding the causal connection between the wrong and the damage suffered.  Where a party asking for damages has demonstrated a legal wrong but failed to establish the causal connection between the wrong and the alleged damages, the award of nominal damages of $1.00 is appropriate.

Source / Authority:

<u>Turtle Mng't v. Haggis Mng't</u>, 645 P.2d 667, 670 (Utah 1982);
Model Utah Jury Instructions 2nd (MUJI 2d) – CV2141.

**INSTRUCTION No. \_\_**

**DAMAGES—NO SPECULATIVE DAMAGES**

You may not award damages that are uncertain, contingent, speculative, or caused by factors other than the unlawful acts of the party against whom damages are requested.

Source / Authority:

Penelko, Inc. v. Price Assoc., Inc., 642 P.2d 1229, 1234 (Utah 1982).

# INSTRUCTION No. __
## STIPULATED FACTS

A stipulation is an agreement. Unless I instruct you otherwise, when the lawyers on both sides stipulate or agree to a fact, you must accept the stipulation as evidence and regard that fact as proved.

The parties have stipulated to the following facts:

1. Mr. Kerrigone and Wilson-Davis entered into an Independent Contractor Agreement on September 29, 2008.

2. On July 16, 2010, ABK, LLC opened a securities brokerage account with Wilson-Davis.

3. In late 2013 and early 2014, the U.S. Securities & Exchange Commission and the Financial Industry Regulation Authority notified Wilson Davis that they were investigating possible legal violations by Wilson Davis, its managers, Mr. Kerrigone (who was not a manager) and other personnel of the firm.

4. In September, 2014, ABK, LLC by Mr. Kerrigone, instructed Wilson-Davis to sell certain securities in ABK's account at the firm and to distribute the proceeds thereof to ABK.

5. On October 9, 2014, Wilson-Davis notified ABK, through letter to Kerrigone, that it had received ABK, LLC's sell order but that Wilson-Davis was refusing to distribute any cash or securities to ABK, LLC due to the indemnity provisions of Section 8 of the independent contractor agreement and the investigations by the SEC and FINRA.

6. On June 26, 2015, FINRA notified Wilson-Davis, its President Jim Snow, its Vice President and Head Trader Byron Barkley, and a trader named Cory Powers

that FINRA intended to charge such persons with violation of federal securities law and/or FINRA rules.  On July 2, 2015, FINRA notified Kerrigone that it intended to charge him with violation of federal securities law and/or FINRA rules.

7. Kerrigone settled the FINRA charges against him in November 2015.  On December 16, 2016, FINRA filed a legal complaint against Wilson-Davis, Mr. Barkley and Mr. Snow.

8. Also on December 16, 2016, the SEC charged Wilson-Davis, Byron Barkley, Paul Davis and Tony Kerrigone with violations of the federal securities laws.  Each person charged entered into a settlement agreement with the SEC for the charges alleged against each.

Since the parties have agreed on these facts, you must accept them as true for purposes of this case.

Source / Authority:

Model Utah Jury Instructions 2nd (MUJI 2d) – CV124.

## INSTRUCTION No. __

## AFFIRMATIVE DEFENSE—ACCORD AND SATISFACTION

Kerrigone asserts as an affirmative defense in this case the doctrine of accord and satisfaction.

Kerrigone claims that he did not have to perform certain obligations of the contract at issue because they are obligations that were eliminated by a settlement agreement between the parties in July 2013 which eliminated all obligations other than Section 8 of the Independent Contractor Agreement.

To succeed on this defense, Kerrigone must prove that:

(1) Kerrigone and Wilson-Davis had a dispute about the Independent Contractor Agreement that they resolved by entering into the settlement agreement; and

(2) Kerrigone fully performed or is performing his obligations under the settlement agreement.

If you decide that Kerrigone has proved both of these things, then Kerrigone is released from performing under the original contract.

Source / Authority:

Model Utah Jury Instructions 2nd (MUJI 2d) – CV2120 (modified).

## INSTRUCTION NO. __

## KERRIGONE'S BRIEF SUMMARY OF POSITIONS

Defendant / Counterclaimant Wilson-Davis is a stock brokerage firm in Salt Lake City. Plaintiff / Counterclaimant Anthony B. Kerrigone is a stock broker.  In 2008, Wilson-Davis hired Kerrigone to work for the firm in its Denver office.  Kerrigone's job was to buy and sell stocks for Wilson-Davis itself, meaning he was hired to try and make money in the stock market for the firm itself and not customers of the firm.  Wilson-Davis's job was to manage and approve all of Kerrigone's stock trades.  Wilson-Davis and Kerrigone signed a contract for this arrangement. In 2010, while Kerrigone worked for the firm, he also opened an account in the name of Plaintiff / Counterclaimant ABK, LLC, a business Kerrigone had formed.

From 2008 through April, 2013, Kerrigone's trading for Wilson-Davis was highly profitable.  In early 2013, however, one of Kerrigone's trades resulted in a loss after Wilson-Davis instructed Kerrigone to sell some stock that he had bought for the firm.  Wilson-Davis then asked Kerrigone to pay for the loss and leave.  Kerrigone did so.

Shortly afterwards, two regulators of Wilson-Davis, the U.S. Securities & Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"), notified Wilson-Davis that Wilson-Davis was under investigation for possible violations of federal securities laws. The SEC and FINRA investigations went on for over two years.  In 2016, the SEC finally concluded its investigation by filing charges against Wilson-Davis, its Chairman Paul Davis, its Vice President Byron Barkley, and Mr. Kerrigone.

In 2015 and 2016, FINRA finally concluded its investigation by filing charges against Wilson-Davis, Mr. Barkley and Mr. Davis, and settling charges against Mr. Kerrigone.

In 2014, while the SEC and FINRA investigations were ongoing, Kerrigone attempted to withdraw funds from the business account he kept at Wilson-Davis.  Wilson-Davis refused,

asserting that Kerrigone was obligated by their contract to indemnify Wilson-Davis for legal fees and costs of the SEC and FINRA investigations. Kerrigone disagreed, asserting that under the terms of the contract, he did not owe Wilson-Davis any indemnity because no legal action had been filed by the SEC or FINRA – something which did not happen until two years later.

After waiting for a year for Wilson-Davis to release his account funds, Mr. Kerrigone and ABK filed this lawsuit alleging civil theft of the funds, conversion, and breach of contract. Wilson-Davis denied Mr. Kerrigone's claims and asserted its own claims for breach of contract and breach of good faith and fair dealing, alleging that Kerrigone owed the firm for legal fees, costs and penalties that it paid in the SEC and FINRA investigations. Kerrigone denies Wilson-Davis's indemnity claims, because of Wilson-Davis's breach of the contract and also because Wilson-Davis is financially responsible for its own violations alleged by the SEC and FINRA.