# EXHIBIT C

## INSTRUCTION NO. __

## CONTRACT INTERPRETATION – PARTIES' INTENT

The statements or conduct of the parties before any dispute arose between them is an indication of what the parties intended at the time the contract was formed. To determine what the parties intended the terms of the contract to mean, you may also consider the language of the written agreement, the parties' negotiations of the contract, any earlier dealings between the parties, any reasonable expectations the parties may have had because of the promises or conduct of the other party, and any other facts or circumstances that existed at the time that the contract was formed.

**INSTRUCTION NO. __**

**DAMAGES – NOMINAL**

A party damaged by the other party's breach of the contract has a right to recover the damages caused by the breach. However, if [name of plaintiff] has not proved any actual or substantial damages caused by the breach, or if [he] has not proved the amount of damages, then you may award as damages a small or nominal sum such as one dollar.

# INSTRUCTION No. __

## AFFIRMATIVE DEFENSE—ACCORD AND SATISFACTION

Kerrigone asserts as an affirmative defense in this case the doctrine of accord and satisfaction.

Kerrigone claims that he did not have to perform certain obligations of the contract at issue because they are obligations that were eliminated by a settlement agreement between the parties in July 2013 which eliminated all obligations other than Section 8 of the Independent Contractor Agreement.

To succeed on this defense, Kerrigone must prove that:

(1) Kerrigone and Wilson-Davis had a dispute about the Independent Contractor Agreement that they resolved by entering into the settlement agreement which eliminated all rights and obligations under the Independent Contractor Agreement except for Section 8 of the Independent Contractor Agreement, which remains in full effect; and

(2) Kerrigone fully performed or is performing his obligations under the settlement agreement and Section 8 of the Independent Contractor Agreement.

If you decide that Kerrigone has proved both of these things, then Kerrigone is released from performing under the original contract.

Source / Authority:

Model Utah Jury Instructions 2nd (MUJI 2d) – CV2120 (modified).

# INSTRUCTION NO. ___

## WILSON-DAVIS' SUMMARY OF POSITIONS

Plaintiff/Counterclaim-defendant Anthony B. Kerrigone worked at Defendant/Counterclaim-plaintiff Wilson-Davis & Co., Inc. from 2008 to 2013 pursuant to the terms of a written independent contractor agreement. Wilson-Davis is a full service brokerage firm, and Mr. Kerrigone worked in Wilson-Davis' trading department. Mr. Kerrigone worked as a market maker whereby he bought and sold stocks using the Firm's money to provide liquidity to the market and hopefully make a profit. Under the independent contractor agreement, Mr. Kerrigone received between 60% and 70% of all profits generated. Mr. Kerrigone was given discretion (subject to reasonable supervision) to identify the stocks that he would trade using Wilson-Davis' money and how to trade and make a market in those stocks. Mr. Kerrigone would enter the trades on the stocks that he identified. Many of the stocks were very active, and Mr. Kerrigone sometimes made several hundred trades a day in a single stock. Over the course of the parties' relationship, Wilson-Davis paid Mr. Kerrigone over $20 million pursuant to the terms of the independent contractor agreement.

In April 2013, Mr. Kerrigone identified a stock with the symbol LOTE and began making a market in that stock. In mid-April, over the course of several days, Mr. Kerrigone's loss in LOTE totaled over $4 million. Mr. Kerrigone was required under the independent contractor agreement to cover such loss, but he refused to do so. Wilson-Davis and Mr. Kerrigone eventually entered into a mutual release and settlement agreement; however, the parties expressly recognized in that document that Mr. Kerrigone's indemnification obligations in regard to any regulatory investigations, claims, or actions relating to his trading at Wilson-Davis remained in full force and effect.

While Mr. Kerrigone worked at Wilson-Davis, he opened an account there in the name of Plaintiff/Counterclaim-defendant ABK, LLC. Mr. Kerrigone left Wilson-Davis in Spring 2013 to

join another broker-dealer, and in Fall 2014, he requested that Wilson-Davis provide the funds from the ABK account to him.

Wilson-Davis refused to return the ABK account funds to Mr. Kerrigone, asserting that Mr. Kerrigone's trading while he was with Wilson-Davis was the subject of investigations by two regulators – the United States Securities and Exchange Commission ("the SEC") and the Financial Industry Regulatory Authority ("FINRA") – and that pursuant to the independent contractor agreement between the parties, Mr. Kerrigone was required to help Wilson-Davis pay to defend and resolve these issues. Mr. Kerrigone was well aware of the SEC and FINRA investigations into his trading because both investigations started in 2013, he had been contacted by both FINRA and the SEC, and he had provided testimony to both regulators. He nevertheless refused to live up to his indemnification obligations that the parties expressly agreed would remain in effect.

In December 2016, the SEC and FINRA filed two separate complaints against Wilson-Davis which included allegations that Mr. Kerrigone violated SEC and FINRA trading rules and regulations while at Wilson-Davis. In Spring 2017, Wilson-Davis settled the SEC matter. The FINRA matter is set for hearing in early November 2017. The SEC and FINRA both asserted claims against Mr. Kerrigone individually for his trading at Wilson-Davis. Mr. Kerrigone settled the FINRA matter in 2015 and the SEC matter in 2016.

Mr. Kerrigone disagreed with Wilson-Davis' assertions regarding his indemnification obligations, and Mr. Kerrigone and ABK filed this lawsuit alleging civil theft of the funds in the ABK account under C.R.S. § 18-4-401, conversion, and breach of contract. Wilson-Davis denied Mr. Kerrigone's claims and asserted its own claims for breach of contract and breach of good faith and fair dealing resulting from Mr. Kerrigone's failure to live up to his obligations under the independent contractor agreement.